THE WINDERMERE SAVINGS & LOAN CO. *v.* THE CLEVELAND CITIZENS' PUBLISHING CO.

*Conversion—Action against bank by publishing company for moneys collected by solicitor—Contract with solicitor to procure advertising, pay bills and divide profits—Evidence as to written contract admissible without producing contract, when—Publisher without interest in funds collected and deposited, before profits divided—Publisher not real party in interest in funds deposited, when— Money collected, deposited and withdrawn by solicitor's agent— Hearsay evidence—Testimony that makers of checks stated they were given for advertising—Verdict for publisher not supported by evidence and contrary to law.*

1. In action against bank for conversion of money bank claimed belonged to it which had been collected by soliciting agent of S, admitting evidence of written contract between plaintiff and S, which provided that S should procure advertisements for paper and divide profits with plaintiff, *held* harmless error, where record showed that search had been made for contract, and that no one knew where it was.

2. Under contract between plaintiff publishing company and S, whereby S agreed to solicit advertising and pay for publishing paper and other expenses, and divide net profits with plaintiff, plaintiff had no interest in funds collected by S's soliciting agent, which it was claimed defendant bank converted, until after there had been collection of all funds and payment of all debts by S, when plaintiff would have coming to it only 50 per cent. of net profits, not necessarily from such fund.

3. Publishing company *held* not real party in interest, in action against bank for conversion of funds deposited in bank by soliciting agent of S, who had contracted with publishing company to solicit advertisements, and pay expenses of publishing paper, and divide profits with publishing company, where agent had collected for advertisements, and, without authority, had indorsed checks and deposited same in defendant bank.

4. In action against bank for conversion of money which agent of one who had contracted to solicit advertisements, and, after paying for publishing paper, to divide profits with plaintiff, had collected for advertising by checks and deposited checks in defendant bank without authority, permitting witness to testify that makers of checks had told him that they were checks paying for advertisements *held* prejudicial error, since such evidence was hearsay.

5. In action against bank for conversion of money deposited by soliciting agent of one who had contracted with plaintiff to solicit advertisements, and, after paying for publishing of paper, to divide profits with plaintiff, which agent had collected checks for advertisements and deposited them without authority in defendant bank, verdict for plaintiff *held* not supported by evidence and contrary to law.

(Decided November 1, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Dustin, McKeehan, Merrick, Arter & Stewart,* and *Messrs. Riley & McQuigg,* for plaintiff in error.

*Mr. D. K. Henderson,* for defendant in error.

VICKERY, J.   This cause comes into this court on a petition in error to the municipal court of the city of Cleveland.

In the court below the Cleveland Citizens' Publishing Company brought an action against the Windermere Savings & Loan Company to recover

Ohio Appellate Reports.                215

App.]       Sav. & Loan Co. v. Clev. Citz. Pub. Co.

something like $900 that it claimed had been converted by the Windermere Savings & Loan Company. At the trial of the action in the court below the jury returned a verdict in favor of the plaintiff company in the full amount of its claim. A motion for a new trial was made and overruled, and error is prosecuted to the judgment of the court.

Several errors are complained of, and it will be necessary in order to understand them to go somewhat in detail into the circumstances which brought about this litigation. It seems that for a number of years prior to the year 1924, when the transactions which resulted in the litigation of this case took place, the Cleveland Citizens' Publishing Company had made a contract with one Fletcher J. Smith, who was an out of town person engaged in soliciting advertisements. The evidence in this case shows that this contract was in writing which clearly and succinctly set forth the rights of the various parties. The original contract provided that Smith was to give the Cleveland Citizens' Publishing Company a bond to guarantee that he would account to the Cleveland Citizens' Publishing Company for the amount of money that was coming to it, after he had made all his collections and paid all bills. Subsequently the contract was carried on from year to year by a verbal arrangement, the original contract being still in force and effect. It is important to bear this in mind, not because testimony was erroneously admitted, as will afterwards be discussed, but because the original writing set forth the rights of Smith and the rights of the Citizens' Publishing Company.

One of the objections made to the evidence in this

case was that this contract was in writing and it was not produced.

While that objection was tenable, we think that reading the whole record one can fairly deduce from it that a search had been made, and that no one knew where it was. The error was technical, and we will pass it over without further comment.

By virtue of this contract the record plainly shows that Smith was to solicit advertisements, hire all his solicitors, make all contracts, and then get out their Labor Day Supplement. After the solicitors and the expenses for publishing the supplement were paid, the publishing company and Smith were each to have 50 per cent. of the net profits. This was the contract in the beginning, and from the testimony of both Mr. Hayes and Mr. Jenkins, the manager of the publishing company, and from that of Mr. Smith himself, under this contract between Smith and the publishing company Smith was to hire his own solicitors, and out of the contracts that were obtained by each solicitor, the solicitor was to have 60 per cent. and Smith was to have 40 per cent. The collections for all contracts were to be made by the several solicitors procuring the contracts. Among the solicitors was one V. T. Williams, who had canvassed for advertisements for Smith in various places of the United States, to-wit, St. Louis, Cincinnati, Rochester, New York, Columbus, and Cleveland, both prior to 1924 and during the summer of 1924. This contract that had existed for several years between Smith and the publishing company was renewed verbally, and Smith proceeded to bring Williams and other solicitors, who solicited advertisements, the amounts due upon which were ultimately collected. V. T.

OHIO APPELLATE REPORTS.    217

App.]    Sav. & Loan Co. v. Clev. Citz. Pub. Co.

Williams, one of the solicitors, had procured advertisements that amounted to about $2,400, of which sum he was entitled to receive from Smith 60 per cent. Smith and Williams got into a controversy, Williams claiming that Smith owed him some money and he would quit, and he collected from customers that he had solicited something like $900 of the advertisement contracts, which he had the right to collect, either at that time or later, his duty, however, being to turn the collections over to Smith.

Ordinarily the money for the advertising contracts when collected was all turned over to Smith, who would keep the money in his personal account and draw out all checks for the payment of all bills, and, when the entire matter was closed up, would pay the Cleveland Citizens' Publishing Company 50 per cent. of the profits of the venture. The checks were made payable to various parties, not as a rule to the Cleveland Citizens' Publishing Company. If a check was made payable to them they immediately indorsed the check and turned it over to Smith, who deposited it in his own account and drew checks upon it.

After the controversy between Williams and Smith, Williams ceased working for Smith. The $900 collected by Williams was made payable to various parties, none of it to the Citizens' Publishing Company, as we understand, but to some fictitious names, the name of the Labor Day Review, etc., there being no organization of that name. Williams apparently had a stamp made and indorsed these checks by using the rubber stamp, and then deposited them in the Windermere Savings & Loan Company to his own account. The Windermere

Savings & Loan Company, acting as a collecting agent, cleared these various checks through the Central National Bank of Cleveland, and the proceeds were placed to the account of Williams, who afterwards drew out that money from his account. And ultimately it was determined that there was a conversion of about $900 of the Cleveland Citizens' Publishing Company's funds by the Windermere Savings & Loan Company. Whereupon Williams was arrested and indicted for embezzling the funds of the Citizens' Publishing Company. He was acquitted, and, while it does not so appear, it must have been upon the theory that the funds did not belong to the Citizens' Publishing Company.

Now, we come to what is really the grave error in this lawsuit. From this record, showing as it does what the contract between Smith and the publishing company was, we cannot conceive how the publishing company had any interest or any ownership in these funds until after there had been a collection of all the funds and a payment of all the debts by Smith, and then the publishing company would have coming to it from Smith only the sum of 50 per cent. of the net profits, not necessarily from these funds, but there would be a debt owing from Smith to the company equal to 50 per cent. of the net profits. But they at no time had any interest in or ownership over the fund collected by Smith for this venture. Before the time above specified the publishing company had no ownership in any of these funds and if every one of Smith's men defaulted they were liable only to Smith, and Smith would be personally responsible to the publishing company for its portion of the amount in which they had defaulted, because he hired the men

and they were responsible to him and not to the publishing company.

Another thing, there is nothing in this record that is inconsistent with the theory that the publishing company had been paid every dollar that was due it by Smith. There is nothing in this record which would show that the net profit of this enterprise would amount to $900, the amount that was claimed to have been embezzled by Williams and converted by the Windermere Savings & Loan Company. The trial court assumed all the time, in direct contradiction of the contract itself, that all these funds belonged to the publishing company; whereas, the publishing company had no interest in them whatever until after there had been made a division of the net profits. It could not have been held liable for anything.

True, the editorials were written by Mr. Hayes, but the paper was in the hands of Smith. He managed everything, procured the advertisements, collected and disbursed the money for the advertisements, and let the contract to the lowest and best bidder, and he paid for the publishing of it, and the publishing company, plaintiff below, would have been liable for nothing in regard thereto. Under this contract, it is a little difficult to see how the publishing company owned a dollar of this money until after there had been a division. As already said, there is nothing to indicate that Smith did not pay the company everything that was coming to it. There is nothing to indicate anything except that Williams took $900 of this money at a time when he claimed that Smith owed him more than that.

The purpose of bringing this action by the Cleve-

220    OHIO APPELLATE REPORTS.

.Sav. & Loan Co. *v.* Clev. Citz. Pub. Co.    [26 Ohio

land Citizens' Publishing Company, instead of by Smith, is apparent. If Smith had brought this action, and he owed Williams, Williams would have a complete set-off. Therefore, to circumvent possibly the defense that Williams might have put up against Smith, the publishing company was induced to bring this action, although it had no ownership whatever in the funds. Consequently, it could not maintain this action and the objection that was made by the defense below that this suit was not prosecuted by the real party in interest was a valid and a proper defense, and should have been entertained by the court, and it was reversible error for the court not to do so.

It is difficult to understand on what theory the court permitted it. Inasmuch as these checks were not payable to the Cleveland Citizens' Publishing Company, but to various names of which there was no legal entity, it became necessary to know whether these checks were to be taken in payment of the contracts in the instant case. Apparently counsel for the plaintiff saw the necessity of connecting these up in some way with these transactions. What does he do? He introduces Smith, who testifies over objection and exception of defendant's counsel that he had interviewed the various makers of these checks drawn on various banks throughout the city, county, and elsewhere, and they all told him that they were checks paying for advertisements in the publication. If ever the rule of hearsay evidence was violated, it was violated in this action. This was clearly erroneous and prejudicial, for which the case should and ought to be reversed.

There are many other errors appearing in this

record that are manifest, but it is not necessary to notice more of them. Suffice it to say that this record is teeming with erroneous rulings of the court, and that the verdict of the jury was not supported by evidence and is contrary to law. There is nothing in this record to show that the Cleveland Citizens' Publishing Company owned a dollar of this property, and, as already said, Williams was undoubtedly discharged and acquitted in the embezzlement case because ownership was alleged in the wrong person. Smith was the owner of this money and undoubtedly a wrong was done Smith by Williams in appropriating this money in the manner in which he did. And if Smith had brought the action against Williams, the latter might have off-set the action he had against him.

We think the decision is wrong, and the verdict and judgment will be set aside, and the case remanded for a new trial.

*Judgment reversed and cause remanded.*

LEVINE, P. J., and SULLIVAN, J., concur.